IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| COVENANT WOODS SENIOR LIVING, LLC d/b/a COVENANT WOODS, A SENIOR LIVING COMMUNITY and BRIGHTSPACE SENIOR LIVING, LLC, | JURY TRIAL DEMAND |
| Defendants. | |

## COMPLAINT

This is an action under the Age Discrimination in Employment Act of 1967, Title I of the Americans with Disabilities Act of 1990, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of age and disability and to appropriate provide relief to Shirley Noble, who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or the "EEOC") alleges that Defendants Covenant Woods Senior Living, LLC d/b/a Covenant Woods, a Senior Living Community, and BrightSpace Senior Living, LLC (collectively,

"Defendants") discriminated against Noble when they terminated her employment because of her age, disability, and/or perceived disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 216(c) and 217; and Section 107(a) of the Americans with Disabilities Act of 1990 (the "ADA"), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Columbus Division.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and Title I of the ADA, and is expressly authorized to bring this action by Section 7(b)

of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705; and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant Covenant Woods Senior Living, LLC ("Covenant Woods") is a corporation organized under the laws of the State of Tennessee. At all times relevant to this action, Defendant Covenant Woods transacted under the names Covenant Woods Retirement Community and/or Covenant Woods, a Senior Living Community (hereinafter "Covenant Woods Retirement Community"). Through its operation of Covenant Woods Retirement Community, Defendant Covenant Woods conducted business in the State of Georgia since at least December 19, 2014.

5. Defendant BrightSpace Senior Living, LLC ("BrightSpace") is a corporation organized under the laws of the State of Tennessee. Since at least December 19, 2014, Defendant BrightSpace conducted business in the State of Georgia through its ownership and operation of Covenant Woods Retirement Community.

6. Defendants maintain the same principal place of business located at 7042 Lee Highway, Chattanooga, Tennessee 37421.

7. In filings with the Georgia Secretary of State, Defendants maintain the same registered agent.

8. Defendant Covenant Woods is privately owned and managed by Defendant BrightSpace.

9. Employees of Defendant BrightSpace represented Defendant Covenant Woods throughout the administrative proceedings relevant to this action.

10. Defendant BrightSpace offers guidance and input into employment decisions made by Defendant Covenant Woods.

11. Employees of Defendant BrightSpace facilitated and participated in Defendant Covenant Woods's termination of Noble's employment.

12. Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of the ADEA and the ADA.

13. Alternatively, Defendants each exercised sufficient control over the terms and conditions of Noble's employment as to constitute Noble's joint employers for purposes of the ADEA and the ADA.

14. At all relevant times, Defendants have collectively and continuously maintained at least 20 employees.

15. At all relevant times, Defendants have been employers engaged in an industry affecting commerce under Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g), and (h), and under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

16. At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

18. Since at least February 2022, Defendants have engaged in unlawful employment practices in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a), the ADEA and in violation of Section 102 of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b), and (d), when Defendants discriminated against Noble in the terms and conditions of her employment because of her age and her disability or perceived disability.

19. Covenant Woods Retirement Community is a retirement community located in Columbus, Georgia. Defendants have owned and operated Covenant Woods Retirement Community since at least December 19, 2014.

20. In or around October 2007, Noble was hired to work as a Receptionist at Covenant Woods Retirement Community.

21. As a Receptionist, Noble took on clerical responsibilities and served as a greeter for guests, families, and residents. Noble's duties included guiding incoming community visitors, screening incoming phone calls, and receiving and distributing mail.

22. Throughout her employment as a Receptionist, Noble was supervised by either an Office Manager, a General Manager, or both.

23. At the end of her employment in or about February 2022, Noble was supervised by the Covenant Woods General Manager who assumed the role in or about April 2021, and by the Covenant Woods Office Manager who assumed the role in or about 2015.

24. Noble received favorable reviews of her performance throughout her employment and met or exceeded the expectations of her role in every written annual performance review she received during her employment.

25. During every year of her employment, including during years in which she did not receive any written performance review, Noble received an annual raise, which Defendants reserve for employees who meet work performance standards and other merits factors.

26. During her employment, Noble was nominated by at least eight different community residents and colleagues for Covenant Woods Retirement Community's "Wall of Champions," which recognizes the community's Team Member of the Month.

27. In or about 2013, the former General Manager designated Noble as Head Receptionist, a designation she would hold until Defendants' elimination of the designation in or about 2017.

28. In or about January 2022, Noble was recognized as one of Covenant Woods Retirement Community's Employees of the Year for the year 2021, for which Noble received a cash bonus and recognition at a community-wide meeting.

29. Despite her satisfactory performance as an employee, Noble's supervisors told Noble multiple times that she should retire because of her age.

30. While Noble, then 74-years-old, was on medical leave in or about 2017, she received multiple inquiries from the Office Manager asking why Noble would not retire.

31. The Office Manager continued to make comments to Noble about retirement through at least September 2021.

32. From on or about the General Manager's hire in April 2021 through on or about February 16, 2022, neither the General Manager nor the Office

Manager raised any concern about Noble's ability to perform her duties as Receptionist.

33. From on or about the General Manager's hire in April 2021 through on or about February 10, 2022, Defendants tasked Noble to perform her typical duties as Receptionist.

34. On or about February 10, 2022, Noble suffered an incident of high blood pressure while at work; Noble was taken to the hospital.

35. Noble was released from the hospital approximately two days later.

36. At the time of her release from the hospital, Noble was told by her doctors that her February 10, 2022 high blood pressure incident had been the result of dehydration.

37. Noble was next scheduled to work on or about February 16, 2022.

38. On or about February 14, 2022, Noble visited Covenant Woods Retirement Community to let residents and colleagues know that she was feeling better and would be returning to work, as scheduled.

39. When Noble returned to work on or about February 16, 2022, a newly hired employee nearly 30 years her junior was performing Receptionist duties at Noble's desk. Noble was instructed to meet with the General Manager and Office Manager.

40. The General Manager opened the meeting with Noble by asking Noble how long she planned to continue working. The General Manager asked Noble questions such as: "Where do you see yourself? Do you need to keep working? Don't you want to travel? See your brother?"

41. Noble responded that she intended to keep working for another two or three years.

42. The General Manager then told Noble that Defendants had lost confidence on her ability to perform her duties as Receptionist, and that Noble's February 10, 2022 medical incident had heightened purported concerns about Noble's performance.

43. Defendant Covenant Woods' Associate Handbook provides that the general disciplinary steps for "poor job performance" include a verbal warning, a first written warning, a second written warning, a suspension, and, finally, termination.

44. In contravention of Defendant's policies, the General Manager began the process of removing Noble from her role as Receptionist.

45. The General Manager told Noble she had the options of working once per week on Sundays, of being transferred to another, unspecified role in an

unspecified department, or of taking a "volunteer ambassador" position without pay.

46. Noble declined the General Manager's offers, in part, because there were no suitable openings in any other department.

47. Noble reconvened with the General Manager and a Sales Director on or about February 17, 2022. Noble asked that she be permitted to continue working for 30 days so that she could have a chance to address any concerns about her performance.

48. The General Manager declined Noble's proposal and responded that Noble no longer had the option of working as Receptionist.

49. Instead, Noble was told to choose between a transfer to an unspecified department or an unpaid volunteer role.

50. Because no suitable opening existed in any other department and because the floated volunteer role provided no pay, Noble declined both options.

51. On or about February 18, 2022, the General Manager sent Noble a letter stating that Noble's employment with Defendants had come to an end. In the letter, the General Manager claimed that "parting ways" with Noble was a "business decision" based on a loss of confidence in Noble's abilities to perform her duties as a Receptionist.

52. After Noble's termination, Defendants tasked at least two employees hired around the time of Noble's termination with working Noble's typical shifts.

53. One of the employees tasked with working Noble's shifts was about 29 years younger than Noble.

54. The other employee tasked with working Noble's shifts was about 37 years younger than Noble.

55. In a June 3, 2022 letter to Noble, the BrightSpace Human Resources Director wrote that Defendants "had lost confidence in [her] ability to perform the critical functions at the front desk for some time" and that the event on February 10 created a purported "safety concern" that "prompted [Defendants] to make the difficult change."

56. Defendants terminated Noble because of her age and her disability or perceived disability.

57. The performance and safety concerns proffered by Defendants as reason for Noble's termination are false and pretextual.

58. Defendants' proposed alternatives were illusory, as no suitable alternative role existed or was offered, and the "volunteer ambassador" role offered by Defendants did not offer any compensation.

### *Discriminatory Termination – Age*

59. At all times relevant to this action, Noble has been within the class of individuals protected by the ADEA. At the time of her termination in February 2022, Noble was 78 years old.

60. Defendants, operating in concert as an integrated enterprise and/or as Noble's joint employers, terminated Noble because of her age.

61. The practices complained of in paragraphs 40 through 58 have deprived Noble of equal employment opportunities and have otherwise adversely affected her status as an employee because of her age.

62. The unlawful employment practices complained of in paragraphs 40 through 58 were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

### *Discriminatory Termination – Disability*

63. Noble is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12101 and 1211(8):

   a. Noble has an impairment, chronic high blood pressure, that substantially limits major life activities, including the operation of the major bodily functions of her cardiovascular system.

    b. Defendants regarded Noble as having a disability by subjecting her to adverse employment actions, including the termination of her employment, because of an actual or perceived impairment of chronic high blood pressure. Prior to terminating her employment, Defendants were aware that Noble regularly took medication to manage her blood pressure.

    c. At all times relevant to this action, Noble was qualified to perform the essential functions of her job as Receptionist, with or without a reasonable accommodation.

64. Defendants, operating in concert as an integrated enterprise and/or as Noble's joint employers, terminated Noble because of her disability or perceived disability.

65. The unlawful employment practices complained of in paragraphs 40 to 58 were intentional.

66. The unlawful employment practices complained of in paragraphs 40 to 58 were done with malice or with reckless indifference to the federally protected rights of Noble.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all other persons in active concert or participation with them, from terminating their employees because of their age or because of their actual or perceived disabilities.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age or older and for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.     Grant a judgment requiring Defendants to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Noble.

D.     Order Defendants to make whole Noble, by providing the affirmative relief necessary to eradicate the effects of their unlawful practices, including but not limited to the reinstatement of her employment or front pay in lieu of reinstatement.

E.     Order Defendants to make whole Noble by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment

practices described in paragraphs 40 to 58, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.    Order Defendants to pay Noble punitive damages for their malicious and reckless conduct, as described in paragraphs 40 to 58 above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

*/s/ Fahad A. Khan*
Fahad A. Khan
Trial Attorney
Georgia Bar No. 442892

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
fahad.khan@eeoc.gov
(470) 531-4811
(404) 562-6905 (facsimile)